UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| JONIQUE SOLER,<br>    Plaintiff, | : <br> : <br> : <br> : | |
| v. | : <br> : | No. 3:20-cv-1645 (VLB) |
| GEORGE L. BOZZI, et al.,<br>    Defendants. | : <br> : <br> : | |

## INITIAL REVIEW ORDER

Plaintiff, Jonique Soler, currently confined at Osborn Correctional Institution in Somers, Connecticut, has filed a complaint *pro se* under 42 U.S.C. § 1983. Plaintiff names eight defendants, Dentist George L. Bozzi, Dentist Richard B. Fisher, Richard Furey, Dental Director Kasabji, Dentist Stephanie Katz, Deputy Warden of Treatment Jane Doe 1, former Commissioner Scott Semple, and Grievance Coordinator Jane Doe 2. He alleges that the defendants were deliberately indifferent to serious dental needs. Plaintiff seeks damages and injunctive relief.

Under 28 U.S.C. § 1915A (2000), the court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. *Id.* This requirement applies both when plaintiff pays the filing fee and when he proceeds *in forma pauperis*. *See Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam).

In reviewing a *pro se* complaint, the court must assume the truth of the

allegations, and interpret them liberally to "raise the strongest arguments [they] suggest[]." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Nevertheless, it is well-established that "pro se complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

I. Allegations

Plaintiff entered the Department of Correction with severe dental issues causing him constant severe pain. Doc. #1 ¶¶ 12-14. Food would become lodged in the holes in his teeth whenever he ate increasing the pain. *Id.* ¶ 12. Even breathing was painful. *Id.* ¶ 13.

Plaintiff began submitting requests for dental treatment upon admission. *Id.* ¶ 17. On March 26, 2019, seven months later, he was seen by Dr. Bozzi. *Id.* ¶ 18. Dr. Bozzi noted constant moderate to severe pain in teeth 17 and 18 with cavities extending into the pulp and an impacted wisdom tooth, tooth 32. *Id.* ¶ 19. Dr. Bozzi told plaintiff that he would have to submit a request to the Utilization Review

Committee ("URC") to have the three teeth extracted. *Id.* He told plaintiff that the impacted wisdom tooth had hooks on the roots which prevented extraction by usual means. *Id.* ¶ 20. No treatment was provided at this visit. *Id.* ¶ 21. Although teeth 17 and 18 did not have issues precluding regular extraction, Dr. Bozzi did not extract them. *Id.* Plaintiff does not believe that Dr. Bozzi submitted a URC request. *Id.* ¶ 22.

During the next four months, plaintiff submitted dental requests but was not seen. *Id.* ¶ 23. On July 9, 2019, Dr. Fisher did a limited exam but did not treat plaintiff. *Id.* ¶ 24. Dr. Fisher noted, contrary to Dr. Bozzi's opinion, that URC approval was not necessary to extract teeth ##32, 17, and 18. *Id.* ¶ 25. The following day, Dr. Fisher again did not treat plaintiff because the autoclave needed service. *Id.* ¶ 27.

Dr. Fisher examined plaintiff on July 17, 2019, noting chronic periodontitis and chronic apical periodontitis and a claim of severe pain. *Id.* ¶ 28. He extracted teeth ##17 and 18. *Id.* Dr. Fisher gave plaintiff 10 tablets of 800 mg Motrin and reduced his dental classification from 3-urgent dental needs to 2-routine dental needs despite plaintiff's other urgent dental issues. *Id.* ¶ 29.

On August 15, 2019, Dr. Fisher extracted tooth #32. *Id.* ¶ 30. Although the hooks on the tooth roots made the process very painful, plaintiff was given only 10 tablets of 600 mg Motrin. *Id.* Plaintiff's pain, which derived from issues with all of his teeth, was not relieved by the extractions. *Id.* ¶ 31. Over the course of a year, Drs. Bozzi and Fisher had prescribed only 30 Motrin tablets. *Id.*

Parts of plaintiff's teeth broke off when he was eating or clenching his teeth

from pain. *Id.* ¶ 32. He asked Drs. Bozzi and Fisher to extract all teeth that required extraction to relieve his pain and to treat the periodontitis, but they refused. *Id.* ¶ 33. They also failed to prescribe alternatives, such as a soft diet or pain medication. *Id.*

In January 2020, plaintiff was transferred to Osborn Correctional Institution ("Osborn") where he was treated by Dr. Katz. *Id.* ¶ 34. On January 10, 2020, Dr. Katz examined plaintiff and noted that teeth ##2, 4, 6, 7, 8, 9, 10, and 11, all his remaining top teeth, needed extraction and teeth ##20, 21, 24, 28, and 29 required restoration. *Id.* ¶ 35. Although she was aware that all of plaintiff's top teeth were causing severe pain, she extracted only tooth #2. *Id.* ¶ 37. She gave plaintiff 30 Tylenol tablets for pain. *Id.* When plaintiff asked to have more teeth extracted, Dr. Katz said she wanted to restore the bottom teeth first. *Id.* ¶ 38. She did not restore any teeth at that visit. *Id.* ¶ 39. She noted, but did not provide treatment, for plaintiff's periodontitis. *Id.* ¶ 40.

For the next several months, plaintiff's complaints about dental pain were ignored. *Id.* ¶ 41. On March 13, 2020, Osborn went on quarantine for two weeks in response to COVID-19. *Id.* ¶ 42. Although movement was restricted, other inmates continued to receive emergency medical and dental care. *Id.*

On May 5, 2020, plaintiff was seen by the hygienist, not the dentist, and was not provided any treatment to address his dental pain. *Id.* ¶ 43. The hygienist noted rampant decay, severe dental pain, and dry mouth, and requested Biotene, a medicated mouthwash. *Id.* ¶ 44. No medication was provided that day. *Id.* ¶ 45. During this period, the commissary stopped selling Motrin and Tylenol because

inmates were using the medications to mask COVID-19 symptoms. *Id.* ¶ 46.

Dr. Katz saw plaintiff on June 19, 2020 and falsely noted no complaints of pain. *Id.* ¶¶ 47-48. Dr. Katz told plaintiff that no routine dental work was being performed because of COVID-19, but he was scheduled and would be called once it was safe to provide treatment. *Id.* ¶ 49. Plaintiff disagrees that his dental needs are routine. *Id.* ¶ 50.

On July 24, 2020, plaintiff was in severe pain and asked a correctional officer to call the dental unit. *Id.* ¶ 52. Dr. Katz noted severe dental pain that was worsening on the top and bottom right but extracted only tooth #4 and performed a temporary restoration of tooth #29. *Id.* ¶¶ 53-54.

On August 5, 2020, plaintiff again asked an officer to call the dental unit. *Id.* ¶ 56. Dr. Katz extracted teeth ##6, 7, and 29. *Id.* ¶ 57. She refused plaintiff's request to extract all remaining top teeth. *Id.* ¶ 58. However, she noted that plaintiff had urgent dental needs requiring immediate treatment. *Id.* ¶ 59.

On August 10, 2020, plaintiff asked an officer to call the dental unit because he was experiencing pain from sharp protrusions from his gums near the extraction sites. *Id.* ¶ 60. Dr. Katz rubbed his gums and told him the pain and protrusions were normal five days after an extraction. *Id.* ¶ 61. Dr. Katz did not provide any treatment or take x-rays that day. *Id.* ¶ 62. Over the next several days, plaintiff used a nail clipper to remove the protrusions. *Id.* ¶ 63.

On August 20, 2020, plaintiff filed a grievance about dental pain and his desire to have his remaining top teeth removed and be fitted for dentures. *Id.* ¶ 65. On September 4, 2020, Doe #2 returned the grievance as compromised, stating that

he was scheduled for dental work which must be completed before he would be eligible for prosthetics.  *Id.* ¶ 66.  Plaintiff states that he was aware of this requirement and filed the grievance to move things along.  *Id.*  Plaintiff alleges that Doe #2 failed to schedule a dental appointment as required under departmental directives.  *Id.* ¶ 67.

On September 6, 2020, plaintiff wrote to defendants Furey, Kasabji, and Doe 1 asking them to intervene and provide urgently needed dental care.  *Id.* ¶ 68.  They did not respond.  *Id.*

On September 9, 2020, plaintiff appealed the grievance.  *Id.* ¶ 69.  The following day, Dr. Katz extracted the remaining top teeth.  *Id.* ¶ 70.  Dr. Katz told plaintiff that he would be without top teeth for several months before he could be fitted for dentures and the fitting takes time.  *Id.* ¶ 71.  She also told him that she would not do any of the required restorations until after the fitting.  *Id.*

Plaintiff requested a soft food diet, but Dr. Katz denied the request and told him he would be able to eat in a few days.  *Id.* ¶ 74.  Plaintiff again experienced pain from protrusions from his gums.  *Id.* ¶ 75.  He wrote to the dental unit but received no response.  *Id.*

On October 3, 2020, plaintiff again removed the protrusions with nail clippers.  *Id.* ¶ 76.  On October 5, 2020, plaintiff wrote to Dr. Katz about the pain and protrusions but has not been seen in response to his communication.  *Id.* ¶ 77.  Plaintiff repeated the removal process several times over the next month.  *Id.* ¶ 78.

As of the filing of the Complaint, plaintiff has not been fitted for dentures, teeth ##20, 21, 24, and 28 have not been restored, and his chronic periodontitis has

not been addressed. *Id.* ¶¶ 81-82, 84. He remains in constant severe pain. *Id.* ¶ 83.

The Department of Correction medical department, which includes the dental unit, is understaffed. *Id.* ¶ 91. Former Commissioner Semple was aware of the problem and did not address it. *Id.* ¶ 92. In a May 2018 deposition in another case, former Medical Director Maurer stated that she told Semple that inmates were not receiving adequate medical care. *Id.* Semple purportedly told her he would not address the issue to preserve the reputation of the University of Connecticut Health Center. *Id.* Dr. Breton assumed the position of Medical Director but resigned after three months because delays in medical care where harming inmates. *Id.* ¶ 93. On March 4, 2019, a union representative reported severe staffing deficiencies in the medical department. *Id.* ¶ 94.

II. Discussion

Plaintiff contends that the defendants were deliberately indifferent to his serious dental needs. His claims cover the period from his entry into Department of Correction custody on October 22, 2018 through the filing of the Complaint on November 2, 2020.

A.  <u>Deliberate Indifference to Dental Needs</u>

Deliberate indifference claims of sentenced prisoners are considered under the Eighth Amendment while deliberate indifference claims of pretrial detainees are considered under the Due Process Clause of the Fourteenth Amendment. *Darnell v. Pineiro*, 849 F.3d 17, 25 (2d Cir. 2017). Department of Correction records show that plaintiff was sentenced on August 13, 2019. *See* ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=332674. Thus, the Court

considers plaintiff's claims against Drs. Bozzi and Fisher under the Fourteenth Amendment and the claim against Dr. Katz under the Eighth Amendment.

1. Drs. Bozzi and Fisher

To demonstrate the required constitutional deprivation to state a deliberate indifference claim, a pretrial detainee must show that his dental need was "sufficiently serious." See *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). This inquiry "requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Id.* A "sufficiently serious" deprivation can exist if the plaintiff suffers from an urgent dental condition that can cause death, degeneration, or extreme or chronic pain. See *Brock v Wright*, 315 F.3d 158, 162-63 (2d Cir. 2003); *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996).

A condition may not initially be serious but may become serious because it is degenerative and, if left untreated or neglected for a long period of time, will "result in further significant injury or the unnecessary and wanton infliction of pain." *Harrison v. Barkley*, 219 F.3d 132, 136-37 (2d Cir. 2000). The Second Circuit has identified several factors that are "highly relevant" to the question of whether a medical or dental condition is sufficiently serious, including "an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998).

Plaintiff alleges that he suffered severe dental pain and that all of his teeth had severe decay requiring extraction or restoration. He also was diagnosed with chronic periodontitis and chronic apical periodontitis. The dental issues affected his ability to eat. These allegations plausibly demonstrate a serious dental need. *See, e.g., Davis v. Falcone*, No. 3:16-cv-1117(JAM), 2016 WL 3919801, at *2 (D. Conn. July 18, 2016) (permitting plaintiff to proceed on deliberate indifference claim where plaintiff alleged he was in severe pain for eight months before being seen, had a hole in his mouth, and pain affected sleep).

Under the Fourteenth Amendment, the conduct of the defendants is considered objectively. "[T]he pretrial detainee must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35. Negligence is insufficient to satisfy this component. *Id.* at 36 (detainee must show that defendant acted recklessly or intentionally, not merely negligently).

Plaintiff alleges that Dr. Bozzi provided no treatment and Dr. Fisher did not address all issues. He extracted a few teeth and did not address the need for restoration. Both dentists acknowledged his urgent need for treatment but provided no or insufficient treatment for months. These allegations are sufficient to plausibly assert a claim failure to act to mitigate the risk to plaintiff's health. The deliberate indifference claims will proceed against Drs. Bozzi and Fisher.

2.  **Dr. Katz**

Dr. Katz treated plaintiff after he was sentenced.  To state an Eighth Amendment claim for deliberate indifference to a serious dental need, plaintiff must show that she knew he faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to address it.  *Harrison*, 219 F.3d at 137-38 (citing *Farmer*, 511 U.S. at 837).

There are objective and subjective components under the Eighth Amendment standard.  Objectively, plaintiff's dental need must be "a serious one."  *Brock*, 315 F.3d at 162.  The standard for this component is the same under the Fourteenth and Eighth Amendments.  *Darnell*, 849 F.3d at 35 (applying new objective standard for second component of the deliberate indifference test for pretrial detainees but not changing standard for first component).  Thus, plaintiff's allegations satisfy this component.

Dr. Katz also must have been "subjectively reckless."  *Spavone v. New York State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013).  She must have been actually aware of a substantial risk that plaintiff would suffer serious harm as a result of her actions or inactions.  She "need only be aware of the risk of harm, not intend harm.  And awareness may be proven 'from the very fact that the risk was obvious.'"  *Id.* (quoting *Farmer*, 511 U.S. at 842).

Negligence that would support a claim for medical malpractice does not rise to the level of deliberate indifference and is not cognizable under section 1983.  *See Salahuddin*, 467 F.3d at 279-80.  "[An official's failure to alleviate a significant risk that he should have perceived but did not" does not constitute deliberate indifference.  *Farmer*, 511 U.S. at 838.  Nor does a disagreement over treatment

10

provided show deliberate indifference.  *See Wright v. Rao*, 622 F. App'x 46, 47 (2d Cir. 2015) (citing *Chance*, 143 F.3d at 703); *Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011) ("It has long been the rule that a prisoner does not have the right to choose his medical treatment as long as he receives adequate treatment .... [T]he essential test is one of medical necessity and not one simply of desirability." (internal quotation marks and citation omitted)).

Plaintiff alleges that Dr. Katz described his dental needs as urgent and requiring immediate treatment but provided no treatment when routine procedures were suspended and repeatedly failed to address the needed restorations.  These allegations are sufficient to show that Dr. Katz understood and disregarded plaintiff's serious dental needs.  The claim against Dr. Katz will proceed as well.

B.  <u>Defendant Semple</u>

Plaintiff alleges that former Commissioner Semple was aware of the deficiencies in medical and dental staff in 2018 but deliberately chose not to address the issue.  As a result, the dental staff was insufficient to provide plaintiff timely dental care to address his urgent needs.

The Second Circuit recently clarified the standard to be applied to a claim of supervisory liability.  The plaintiff must "plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Tangreti v. Bachman*, ___ F.3d ___, 2020 WL 7687688, at *6 (2d Cir. Dec. 28, 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)).  Thus, plaintiff must show the former Commissioner Semple was personally aware of, and deliberately disregarded, facts showing a substantial risk to plaintiff's health.  *See*

*id.*

Plaintiff alleges that at least one medical director brought the severe staffing shortages to Semple's attention but was told he would not address them. At this stage of litigation, the allegation is sufficient to show Semple's awareness and deliberate disregard of the issue. *See Michalski v. Erfe,* No. 3:17-CV-2074(VAB), 2019 WL 5965204, at *14 (D. Conn. Nov. 13, 2019) (permitting supervisory liability claim to proceed where plaintiff alleged that officials knew medical units were understaffed and failure to provide adequate staff would cause pain to inmate population because commissioner created or perpetuated policy under which unconstitutional practices occurred). The claim against former Commissioner Semple will proceed at this time.

C. <u>Defendants Furey, Kasabji. Doe #1, Doe #2</u>

Plaintiff alleges that defendants Furey, Kasabji, Doe #1, and Doe #2 did not adequately respond to their knowledge of his pain and urgent need for dental treatment. He states that, on September 6, 2020, he wrote to Furey, Kasabji, and Doe 1 complaining of pain and asking them to intervene and facilitate urgently needed dental treatment. Doc. #1 ¶ 68. He attaches copies of his inmate requests addressed to Furey and Doe #1 and a letter to Kasabji. *Id.* Ex. 14. Plaintiff alleges he received no responses. On September 4, 2002, Doe #2 compromised his grievance stating, per Dr. Katz, that he was scheduled for treatment that must be performed before he could be fitted for dentures. *Id.* Ex. 13. On September 9, 2020, Furey approved his grievance appeal noting that he was scheduled for the remaining extractions the following day and that dentures had been approved. *Id.*

Ex. 15.

To state a deliberate indifference claim against these defendants, plaintiff must "plead and prove that the supervisor had subjective knowledge of a substantial risk of serious harm to an inmate and disregarded it." *Tangreti*, 2020 WL 7687688, at *4. Plaintiff must make this showing based on the supervisor's own conduct, not by reason of his or her supervision of others who acted unconstitutionally. *Id.* at *6.

Plaintiff has provided evidence that he was treated within four days of his letter and requests to Furey, Kasabji, and Doe #1. It is not clear whether defendants Kasabji and Doe #1 received those communications and had subjective knowledge of a substantial risk of harm. However, the prompt treatment negates any claim that a risk of harm to plaintiff was disregarded. Although plaintiff contends that the treatment did not address all of his issues, he does not allege any further communication with these defendants. Accordingly, the claims against Furey, Kasabji, and Doe #1 are dismissed.

Regarding Doe #2, plaintiff's claim is that she failed to follow the grievance procedures because she consulted with Dr. Katz instead of scheduling a dental visit. Inmates, however, have no constitutional entitlement to grievance procedures, to receive a response to a grievance, or to have a grievance properly processed. *See Riddick v. Semple*, 731 F. App'x 11, 13 (2d Cir. 2018) (claim relating to grievance procedures "confused a state-created procedural entitlement with a constitutional right"; "neither state policies not 'state statutes ... create federally protected due process entitlements to specific state-mandated procedures'")

(quoting *Holcomb v. Lykens*, 337 F.3d 217, 224 (2d Cir. 2003)).  As plaintiff has no constitutional entitlement to have his grievance properly processed, any claim that Doe #2 failed to schedule a dental appointment is dismissed.  Further, her response to the grievance fails to suggest that she understood that plaintiff faced a substantial risk of harm as a result of her actions.

CONCLUSION

The claims against defendants Furey, Kasabji, Doe #1, and Doe #2 are DISMISSED pursuant to 28 U.S.C. § 1915A(b)(1).  The case will proceed on the claims for deliberate indifference to dental needs against defendants Bozzi, Fisher, Katz, and Semple.

The Court enters the following orders:

(1) As plaintiff paid the filing fee to commence this action he is responsible for effecting service on all defendants in their individual and official capacities within ninety days from the date of this order.  Service shall be effected in accordance with Rule 4 of the Federal Rules of Civil Procedure.  Plaintiff shall file returns of service indicating his compliance with this order.  Failure to effect service within the time specified may result in the dismissal of this action as to any defendant who has not been served.

(2) To facilitate individual capacity service, the Clerk shall send plaintiff instructions for service of a Complaint on the defendants in their individual capacities, together with four blank Notice of Lawsuit forms, and four blank Waiver of Service of Summons forms.  Plaintiff shall file a Notice with the Court indicating the date on which he mailed the Notice of Lawsuit and Waiver of Service of

14

Summons forms to the defendants in their individual capacities. Plaintiff shall file with the Clerk the signed Waivers of Service of Summons forms when he receives them from the defendants. If any defendant fails to return a signed waiver of service of summons form by the date specified, plaintiff shall arrange for that defendant to be personally served in his or her individual capacity in accordance with Fed. R. Civ. P. 4(m).

(3)     The Clerk shall send plaintiff a copy of this Order.

(4)     The Clerk shall send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs and they shall facilitate service on any Defendant no longer in state service who is receiving retirement benefits or insurance under a state-sponsored plan and whose address is therefore known to the State Comptroller.

(5)     The defendants shall file their response, either an answer or motion to dismiss, within sixty (60) days from the date the waiver forms are sent. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above. They also may include all additional defenses permitted by the Federal Rules.

(6)     Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within seven months (210 days) from the date of this order. Discovery requests need not be filed with the court.

(7)     All motions for summary judgment shall be filed within eight months (240 days) from the date of this order.

(8) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9) If plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that the plaintiff MUST notify the court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. Plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If plaintiff has more than one pending case, he should indicate all case numbers in the notification of change of address. Plaintiff should also notify the defendant or the attorney for the defendant of his new address.

(10) Plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court. Plaintiff is advised that the Program may be used only to file documents with the court. Local court rules provide that discovery requests are not filed with the court. D. Conn. L. Civ. R. 5(f). Therefore, discovery requests must be served on defendants' counsel by regular mail.

(11) The Clerk shall immediately enter the District of Connecticut Standing Order Re: Initial Discovery Disclosures concerning cases initiated by self-represented inmates and shall send a copy to plaintiff.

SO ORDERED.

Dated this day at Hartford, Connecticut.

_____
Vanessa L. Bryant  Digitally signed by Vanessa L. Bryant
Date: 2021.01.13 17:08:24 -05'00'
**Vanessa L. Bryant**
**United States District Judge**